# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DIVISION OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **JENEL HILL as Next of Friend of EDWARD HILL V Surviving Minor Son & Next of Kin to ERNEST EDWARD HILL IV Deceased.** ) ) ) ) ) | |
| **vs.** ) ) | **CASE NUMBER:_____** <br> **JURY DEMAND** |
| **CORECIVIC, INC., CORECIVIC OF TENNESSEE, LLC, TENNESSEE DEPT. OF CORRECTION JACOB WENDELL KADO, And JOHN DOE DEFENDANTS. Defendants.** ) ) ) ) ) ) | |

## ORIGINAL COMPLAINT

COMES NOW the Plaintiff, JENEL HILL, mother of the Decedent's surviving minor son, EDWARD HILL V, by and though the undersigned counsel of record, and in support of the forgoing Original Complaint, would take oath and state and show as follows:

### JURISDICTION AND PARTIES

1. That at all times relevant hereto the Decedent, ERNEST EDWARD HILL IV, was an inmate housed at the Trousdale Turner Correctional Complex (hereinafter "TTCC"), located in Hartsville, Trousdale County, Tennessee.

2. This action is brought by the next of kin on behalf of the Plaintiff's surviving minor son, pursuant to Title 42 U.S.C.§ § 1983 and 1988, as well as the common and statutory laws of the State of Tennessee, to redress the violation of Plaintiff's rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

3. This Court has jurisdiction under 28 U.S.C. § 1331 to hear Plaintiff's claims arising under the Constitution and the laws of the United States, and under 28 U.S.C. § 1343 to hear Plaintiff's claims to recover damages and secure equitable relief under any act of Congress providing for the protection of civil rights.

4. This Court has supplemental jurisdiction over all Common and State law claims under 28 U.S.C. § 1367, as there is a common nucleus of operative facts between State and Federal claims.

5. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. § 1391 (b) (2) as this is the judicial district in which a substantial part of the acts and or omissions did occur. Additionally, the Defendants to this action are deemed to reside in this district under 28 U.S.C. § 1391 (c) and individual defendants, (if any) are likely to reside in this district; thus venue is appropriate under 28 U.S.C. § 1391 (b) (1).

**PARTIES**

6. That at all times relevant hereto, the Decedent, ERNEST EDWARD HILL IV, (hereinafter "DECEDENT") was an inmate housed at the Trousdale Turner Correctional Complex, located in Hartsville, Trousdale County, Tennessee.

7. That the decedent is survived his minor son, EDWARD HILL V, a child currently under eighteen years of age.

8. That the Defendant, TENNESSEE DEPARTMENT OF CORRECTIONS (hereinafter "TDOC") is the political entity responsible for the housing of all state inmates and for overseeing the operation of Trousdale Turner Correctional Center, (hereinafter "TTCC.")

9. That Defendant CORECIVIC, INC. (hereinafter "CORECIVIC" and *previously conducting business* as COMMUNITY CORRECTIONS CORPORATION of AMERICA "CCA") is a private corporation, duly organized under the laws of the State of Maryland and currently regularly conducting business in the State of Tennessee, namely owning and operating four private prisons in the State, including Trousdale Turner, TTCC.

10. CORECIVIC OF TENNESSEE, LLC (collectively with CORECIVIC INC., referred to as "CORECIVIC") is a wholly owned subsidiary of CORECIVIC INC. currently conducting business within the State of Tennessee and providing correctional services under color of state law.

11. The TTCC is the responsibility of the TDOC, but is operated by a private, for-profit prison entity. To circumvent state law that prohibits the TDOC from having more than one prison operated by a private entity, the TDOC has outsourced its prison management to Trousdale County, which in turn outsources to CORECIVIC, a private, for profit-entity.

## BACKGROUND OF FACTS ON TTCC

12. The TTCC has only been open since 2016, but in its short history serious concerns have been raised about staff shortages and dysfunction at TTCC.

13. Initially touted as a "*classification center*" to provide short term housing to minimum security offenders, it now provides long term housing to some of the most violent offenders in the state.

14. In the same year TTCC opened, the company was sued by its own shareholders because, among other things, the company had misrepresented

3

its pattern of understaffing, which ultimately resulted in the Federal Bureau of Prisons terminating its relationship with CORECIVIC.

15. According to a November 2017 Performance Audit issued by the Tennessee Comptroller of the Treasury, TTCC management's noncompliance with contract requirements and departmental policies significantly interfered with TDOC's ability to effectively monitor the private prison.

16. Most relevant to this action, that same report found that TTCC is significantly "short-staffed which may have limited their ability to effectively manage the inmate population." The Comptroller's first finding states in part that TTOC…operated with fewer than the approved correctional officer staff, did not have all staffing rosters, did not follow staffing pattern guidelines, and [TTCC] left critical posts un-staffed."

17. As recently as January of 2020, a subsequent Performance Audit Report issued by the Tennessee Comptroller of the Treasury, **again** found numerous deficiencies and shortcomings against TTCC, including that numerous positions were vacant for over forty-five (45) days, which directly correlate to the correctional officer staffing issues.

18. Taken as whole, the 2020 Performance Audit demonstrates that the TTCC is a facility where compliance with requirements, rules and policies is widely ignored. Further, upon information and belief, given the ongoing staffing shortages, they regularly cut corners when it comes to complying with state and federal laws regarding the rights, needs and safety of inmates.

19. In addition to significant staffing shortages, there are frequent and repeated incidents of violent crime and gang activity at CORECIVIC facilities in Tennessee, and TTCC in particular.

20. The Human Rights Defense Center reports that there were **twice** as many murders in the four CORECIVIC facilities in Tennessee than in the **other ten** prisons run by the Tennessee Department of Correction.

21. That same report indicates that the homicide rate in Tennessee CORECVIC facilities was over four times higher that the rate for other TDOC prisons.

22. That even though they are contractually obligated to maintain minimum staff levels and security, CORECIVIC and its corporate leaders have bolstered the companies profits by reducing staff levels, despite overwhelming evidence that these practices lead to increased violence and murder in its prison population.

23. Furthermore, the Comptroller's reports strongly suggest that CORECIVIC has repeatedly engaged in fraud and evidence tampering in order to conceal its systematic understaffing, contractual violations and employee misconduct.

## STATEMENT OF FACTS

24. On or about June 15th, 2019, the Decedent, ERNEST EDWARD HILL was killed by another inmate while housed at TTCC.

25. Upon information and belief, the decedent was stabbed to death by fellow inmate, JACOB WENDELL KADO.

26. That TTCC has a regular pattern and practice of hiring inexperienced and frequently young persons with little or no formal law enforcement education or experience to supervise and control known violent offenders.

27. That TTCC has a history of correctional officers overlooking and in some cases actually introducing illegal contraband including weapons into TTCC.

28. That TTCC has a history of failing to maintain sufficient and experienced staffing and as a result, contraband including drugs and weapons are routinely present and readily available to inmates.

29. That TTCC has a lengthy and significant history of violence inflicted upon its inmates and corrections personnel.

30. That upon information and belief, the existence and influence of outside violent street gangs is present and well known within TTCC.

31. That TTCC has at least one documented incident of a correctional officer being "an affiliated member" of a violent street gang while employed at TTCC.

32. That TTCC has knowingly and willfully disregarded safety concerns by placing "non-compatible" inmates in the same pod or cell with other known "non-compatible" inmates.

33. Upon information and belief, these conditions still persist, and there have been at least two additional homicides at TTCC alone within the last twelve months.

34. That CORECIVIC's willful and deliberate indifference to the forgoing promotes and perpetuates an environment of lawlessness and violence.

35. That Mr. Hill's death is the direct and foreseeable result of the pattern of negligence and willful indifference shown to the lives, safety and security of CORECIVIC inmates.

36. That this indifference exists not only on the local level, but is also prevalent and systemic throughout its entire corporate structure.

37. According to a 2011 lawsuit filed by the American Civil Liberties Union, inmates referred to CORECIVIC's Idaho Correctional Center as "Gladiator School" because the understaffing led to such a violent atmosphere at the prison. CORECIVIC settled the lawsuit with the ACLU agreeing to rectify those shortages and agreed to provide minimum staff levels. However, it was later found in contempt in 2013 because if failed to honor the agreement and falsified records to misrepresent the number of guards on duty.

38. In 2014 an FBI investigation resulted in the Governor ordering state officials to take control of that facility.

39. On or about February 23rd, 2017, a federal grand jury found that CORECIVIC had violated inmates' Eighth Amendment right to be free cruel and unusual punishment by being willfully and deliberately indifferent to the serious risk posed by the company's long-standing practice of understaffing the Idaho Correctional Facility.

40. In February 2015 at a CORECIVIC facility in Oklahoma, ten prisoners were involved in a fight that left five with stab wounds. The following month, eight more were involved in another stabbing incident. In June of that year, thirty-three gang members fought with weapons and eleven prisoners sent to the hospital. In September of 2015, four inmates were killed during a riot at the same facility. Two guards were later indicted for bringing drugs and other contraband into the prison. Between 2012 and 2016, one third of all

homicides in Oklahoma prisons occurred at two CORECIVIC facilities even though they housed just over ten percent of the state's prison population.

41. In August of 2016, the Office of the Inspector General of the United States Department of Justice found widespread deficiencies in staffing and other areas at facilities operated by the Federal Bureau of Prisons by private contractors, including those operated by CORECIVIC.

42. The 2017 Comptroller's Audit of TTCC found systemic problems with understaffing and gang violence. The audit further noted that the information provided by CORECIVIC regarding TTCC was so incomplete that it was not possible to determine the accuracy of staffing levels.

43. On December 12th, 2017, Ashley Dixon, a former guard at TTCC, testified before a legislative committee that she had resigned from the company after witnessing two inmates die from medical neglect.

44. The forgoing incidents-and others like them, demonstrate that CORECIVIC, its wardens, senior officers, and directors adopted and enforced a corporate and institutional policy of understaffing prison facilities all for the purpose of increasing company profits.

45. These practices have consistently led to riots, assaults, murders and mayhem and as such, the death of Ernest Edward Hill was a likely and predictable consequence of this corporate policy.

46. The directors and senior officers of CORECIVIC knew that the understaffing, neglect and inadequate training were rampant at TTCC and did not make reasonable efforts to supervise offending employees or counteract ongoing threats to inmate safety.

47. That given the extent and breadth of safety and security detailed in two different Comptroller of the Department of the Treasury Audits, the TDOC was similarly aware and "on notice" of these deficiencies and have willfully allowed them to persist.

## COUNT ONE
## WRONGUL DEATH

48. Plaintiff adopts and incorporates paragraphs 1-47 as if repeated verbatim and set forth herein by reference.

49. That as to all Defendants, Plaintiff claims damages for the wrongful death of the Decedent and for funeral expenses under 42 U.S.C. §§1983 and 1988, and the statutory and common laws of the State of Tennessee.

## COUNT TWO
## SURVIVAL ACTION

50. Plaintiff adopts and incorporates paragraphs 1-49 as if repeated verbatim and set forth herein by reference.

51. That as to all Defendants, the Plaintiff was forced to endure great conscious pain and suffering, and to be attended to by physicians, and to incur expenses for such medical care prior to his death.

52. That the Plaintiff filed no action during his lifetime, but said claims may be filed by his heirs.

## COUNT THREE
## CRUEL & INHUMAN PUNISHMENT

53. Plaintiff adopts and incorporates paragraphs 1-52 as if repeated verbatim and set forth herein by reference.

54. That Defendants CORECIVIC and TDOC, were willfully and deliberately indifferent to the significant violence, risk and lawlessness posed by the

9

company's long-standing practice of understaffing so as to constitute "cruel and inhuman punishment" pursuant to Title 42 U.S.C.§ § 1983 and 1988, and the Eighth Amendment to the United States Constitution, entitling him to damages.

## COUNT FOUR
## GROSS NEGLIGENCE

55. Plaintiff adopts and incorporates paragraphs 1-54 as if repeated verbatim and set forth herein by reference.

56. The Plaintiff brings claims of gross negligence against Defendants CORECIVIC and TDOC resulting in the death of Mr. Hill.

57. That Defendants did both knowingly and intentionally exhibit such a callous and reckless disregard for the safety and rights of its inmates that a conscious indifference is implied at law.

## COUNT FIVE
## NEGLIGENCE

58. Plaintiff adopts and incorporates paragraphs 1-57 as if repeated verbatim and set forth herein by reference.

59. That Defendants CORECIVIC and TDOC owed Plaintiff a duty to maintain a reasonable level of safety and security for its inmates and detainees placed in their respective care and custody.

60. That Defendants the breached that duty in the manner described herein.

61. That as a direct and proximate cause of that breach, Plaintiff died suffering a pecuniary loss entitling him damages.

## COUNT SIX
## FAILURE TO TRAIN & DISCIPLINE AND NEGLIENT HIRING

62. Plaintiff adopts and incorporates paragraphs 1-61 as if repeated verbatim and set forth herein by reference.

63. That as to Defendants CORECIVIC, TDOC and JOHN DOE DEFENDANTS, Defendants were/are in charge with the hiring, training, supervision and discipline of its direct and contractual employees within their control.

64. That Defendants have failed to ensure that its employees have appropriate or sufficient experience and training for the position.

65. As evidenced by the acts and omissions of Defendants detailed herein, and their subsequent failure to correct or take remedial measures to prevent same in the future, Defendants have negligently hired, inadequately trained, supervised and disciplined its employees.

## COUNT SEVEN
## ASSAULT

66. Plaintiff adopts and incorporates paragraphs 1-64 as if repeated verbatim and set forth herein by reference.

67. That Plaintiff brings claims against JACOB WENDELL KADO and JOHN DOE DEFENDANTS for knowingly and intentionally inflicting bodily injury upon Decedent.

68. That as result, Plaintiff sustained injuries entitling him to damages.

**WHEREFORE,** premises considered, Plaintiff seeks the following:

That at a final hearing of this cause, judgment be entered against Defendants for actual and punitive damages together with pre-judgment interest at the maximum rate allowed by law; post judgment interest at the legal rate; discretionary costs of court, attorney fees; and any and all other such relief the Plaintiff may be entitled to in law or in equity.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully Submitted,

/s/ Adam Wilding Parrish
ADAM WILDING PARRISH PC
Tennessee Bar #021917
219 2nd Avenue North, Ste 400
Nashville, TN 37201
(615) 444-6884
(615) 444-8094 (Facsimile)
*pc866@bellsouth.net*-email